# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| | ) | |
| vs. | ) | Criminal No. 05-00101 |
| | ) | Judge Nora Barry Fischer |
| PAULA DUDASH, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

I.  **INTRODUCTION**

This matter is before the Court on a Motion for Early Termination of Supervised Release filed by counsel on behalf of Defendant Paula Dudash ("Defendant") on January 27, 2012. (Docket No. 115). This Motion is the second such motion for early termination of supervised release filed by Defendant. (*See* Docket No. 107). In support of early termination, Defendant asserts that she has fully complied with the conditions of supervision, she suffers from serious health conditions, and the United States Probation Office does not oppose the early termination of Defendant's supervised release. (Docket No. 115 at ¶¶ 3-5, ¶ 8; Docket No. 118 at ¶ 1). The Government opposes early termination. (*See* Docket No. 117). The Probation Office has informed the Court that Defendant's conditions of supervision can accommodate her medical appointments and treatment. Upon consideration of the parties' positions, and for the following reasons, Defendant's Motion is denied, without prejudice.

II.  **BACKGROUND**

On November 4, 2005, Defendant pled guilty to one count of conspiracy to possess with intent to distribute five grams or more of cocaine base, in the form commonly known as crack, in violation of 21 U.S.C. § 846. (Docket No. 35). During the change of plea hearing, the Court

1

accepted Defendant's plea agreement into evidence. (*See id.* at Exhibit #1).

On January 27, 2006, the Honorable Thomas M. Hardiman[1] sentenced Defendant to sixty (60) months of imprisonment and a term of supervised release of five (5) years. (Docket No. 51). Judge Hardiman imposed standard and additional conditions to Defendant's term of supervised release, including, among other terms, that she: not commit another Federal, state or local crime; not possess a firearm, destructive device or other dangerous weapon; not purchase, possess, use, distribute or administer any narcotics or other controlled substances; not leave the judicial district without requesting permission of the Court or Probation Office; maintain lawful employment; provide for her dependents; not associate with persons engaged in criminal activity or convicted felons without permission from the Probation Office; report to the Probation Office as required and permit the Probation Officer to visit her home at any time; refrain from the use of alcohol; participate in a program of testing and, if necessary, treatment for substance abuse to include alcohol; and participate in a mental health treatment program. (Docket No. 51 at 3-4).

While serving her term of imprisonment, Defendant petitioned the Court under 28 U.S.C. § 2255 to vacate, set aside, or correct her sentence. (Docket No. 77). She also moved to reduce her sentence under 18 U.S.C. § 3582(c)(2) based on a 2007 amendment to the Sentencing Guidelines that lowered the base offense levels applicable to cocaine base ("crack") offenses. (Docket No. 92). The Court denied each of these petitions or motions. (Docket Nos. 80, 96).

Defendant was released from the custody of the Bureau of Prisons on December 31, 2009. (Docket No. 115 at ¶ 2). Her five-year term of supervised release is set to expire on December 30, 2014. (Docket No. 117 at ¶ 22). At the present time, Defendant has served approximately two (2) years and two (2) months of her term of supervised release, and, without

---

[1] Judge Hardiman was elevated to the United States Court of Appeals for the Third Circuit in the spring of 2007.

Court intervention, she will remain on supervision for approximately an additional two (2) years and ten (10) months.

Defendant, through counsel, filed her first Motion for Early Termination of Probation/Supervised Release[2] on August 9, 2011. (Docket No. 107). In favor of early termination, Defendant cited her diagnosis with cancer in the fall of 2010 and her need to address attendant health concerns. (*Id.*). The Government opposed this motion. (Docket No. 108). The Probation Office also opposed the motion and "recommended to the Court that supervision of the Defendant be continued given her background and history." (Docket No. 109 at 3).

In a Memorandum Opinion filed on August 25, 2011, the Court denied Defendant's first motion to terminate her supervised release largely because the Defendant's cancer diagnosis was not a sufficient basis for early termination. (Docket No. 109). Defendant failed to demonstrate that the conditions of her supervised release interfered with her medical treatment or prognosis in any way. (*Id.* at 5). Moreover, the Court held that Defendant's adherence to the Bureau of Prisons' rules during her incarceration and to the conditions of supervision did not warrant premature termination. (*Id.* at 4).

On November 22, 2011, Defendant, proceeding *pro se*, filed a letter that the Court construed as a Motion for Retroactive Application of Sentencing Guidelines to Crack Cocaine Offense under 18 U.S.C. § 3582. (Docket No. 110). The Court denied this motion in a Memorandum Opinion filed on January 26, 2012. (Docket No. 114).

Defendant's second Motion for Early Termination of Supervised Release is now before the Court. (Docket No. 115). On February 3, 2012, the Government filed its Response in Opposition to Defendant's Motion for Early Termination of Supervised Release. (Docket No.

---

[2] The Court construed this motion as a motion for early termination of the term of supervised release that she is presently serving. (*See* Docket No. 109 at 1).

117). Defendant's counsel filed a Reply to the Government's Response on February 10, 2012. (Docket No. 118). Shortly thereafter, the Court conferred with the Probation Office regarding the Defendant's medical status, as her ill health is the primary basis of her request for early termination of supervised release. On February 15, 2012, the Court ordered Defendant's counsel to submit medical records or reports in support of Defendant's motion, as neither her Motion nor Reply described her illness beyond "recurring bouts with cancer." (*See* Docket Nos. 115 at ¶ 4; 118 at ¶ 1; 119). Defendant's counsel filed a motion to seal said records or reports, which this Court granted on February 28, 2012. (Docket Nos. 120-121). Two days later, on March 1, 2012, Defendant's counsel filed Defendant's medical records under seal. (Docket No. 122). The Court has now had an opportunity to study these medical records and to confer with the Probation Office concerning same.

In support of early termination, Defendant asserts three arguments: (1) that she has been on supervision for over two years and has been fully compliant with all applicable conditions during this time period; (2) that she suffers from serious health conditions, including "recurring bouts with cancer;" and (3) that the United States Probation Office does not oppose the early termination of Defendant's supervised release. (Docket No. 115 at ¶¶ 3-5, ¶ 8; Docket No. 118 at ¶ 1). The Government opposes Defendant's motion primarily because Defendant has not demonstrated that her supervised release interferes with her cancer treatments. (Docket No. 117 at ¶¶ 32). As noted above, the Probation Office supports the Government's position that Defendant's supervised release does not inhibit her medical treatment.

### III.  STANDARD

After consideration of "the factors set forth in section 3553 (a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7)," the Court may "terminate a term of supervised

4

release and discharge the defendant released at any time after the expiration of one year of supervised release . . . if it is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice." 18 U.S.C. § 3583(e)(1).[3] "[E]arly termination of supervised release under section 3583(e) should occur only when the sentencing judge is satisfied that something exceptional or extraordinary warrants it." *United States v. Laine*, 404 F. App'x 571, 573-74 (3d Cir. 2010) (citing *United States v. Lussier*, 104 F.3d 32, 36 (2d Cir. 1997)); *see also United States v. Kay*, 283 F. App'x 944, 946 (3d Cir. 2008) (stating, "[I]t is clear on the present record that the District Court did not abuse its discretion in looking for changed circumstances and determining that [the defendant] did not warrant a modified term of supervised release").[4] In section 3583(e)(1), the phrase "interest of justice" "gives district courts latitude to consider a broad range of factors." *United States v. Pickett*, No. 06-284, 2011 U.S. Dist. LEXIS 34236, at *2 (E.D. Pa. Mar. 30, 2011) (citing *United States v. Pregent*, 190 F.3d 279, 282 (4th Cir. 1999)).

---

[3] In *United States v. Weintraub*, 371 F. Supp. 2d 164, 166 (D. Conn. 2005), the court listed the nine extra-statutory factors adopted by the Judicial Conference Committee on Criminal Law in March 2003 when evaluating whether to grant a defendant's motion for early termination for supervised release. These factors are:
1. stable community reintegration (e.g., residence, family, employment);
2. progressive strides toward supervision objectives and in compliance [sic] with all conditions of supervision;
3. no aggravated role in the offense of conviction, particularly large drug or fraud offenses;
4. no history of violence…
5. no recent arrests or convictions…
6. no recent evidence of alcohol or drug abuse;
7. no recent psychiatric episodes;
8. no identifiable risk to the safety of any identifiable victim; and
9. no identifiable risk to public safety.

*Id.* Although not controlling, the Court has taken these factors into consideration when evaluating the instant matter.

[4] For purposes of resolving Defendant's August 9, 2011 Motion for Early Termination of Supervised Release, the Court assumed "that it [was] not bound by the mandatory minimum term of four (4) years [of supervised release] and would be authorized to grant the relief requested." (Docket No. 109 at 4); *see also United States v. Vargas*, 564 F.3d 618, 623, n. 3 (2d Cir. 2009), *cert. denied*, 130 S. Ct. 308 (2009); *United States v. Spinelle*, 41 F.3d 1056, 1060 (6th Cir. 1994); *United States v. Simmons*, No. 05 Cr. 1049 (JGK), 2010 WL 4922192 (S.D.N.Y. Dec. 1, 2010). The Court adopts the same position in resolving the instant matter.

## IV. ANALYSIS

The Court will first address Defendant's specific arguments in support of her current Motion for Early Termination of Supervised Release. First, Defendant's full compliance with all of the conditions of supervised release does not warrant early termination. "Simple compliance with the conditions of supervised release are [sic] expected and not exceptional." *Laine*, 404 F. App'x at 574; *accord Karacsonyi v. United States*, 152 F.3d 918, 1998 U.S. App. LEXIS 15107, at *5 (2d Cir. June 10, 1998) (stating, "Full compliance, after all, is merely what is expected of all people serving terms of supervised release"); *United States v. Antico*, No. 98-242, 2008 WL 2973033, at *2 (E.D. Pa. Aug. 4, 2008) (stating, "Mere compliance with the conditions of supervision is insufficient to warrant early termination of supervision"). By order of Court, Defendant is obligated to comply with the conditions of her supervised release. (Docket No. 51). Failure to comply with these conditions could result in the revocation of her supervised release, extension of the term of her supervised release, and/or the modification of the conditions of her supervision. (*Id.*); *see also* 18 U.S.C. § 3583(e)(2)-(4).

Although Defendant argues otherwise, her medical records indicate that she has not fully complied with all of the conditions of supervision. (*See* Docket No. 122-2 at 7). A letter written by Defendant's physician on September 16, 2010 states that Defendant has continued to consume alcohol in a quantity of fifteen drinks per month, which "is far less than her previous consumption." (*Id.*). Defendant's conditions of supervision specifically maintain that Defendant "shall refrain from the use of alcohol." (Docket No. 51 at 3). Even though this letter predates Defendant's diagnosis with thyroid cancer, her reported alcohol consumption is in contravention of her conditions of release and thus demonstrates noncompliance. As such, the Court reviewed this matter with the assigned Probation Officer who advised that alcohol usage is not a current

problem and has not been a problem for the past year. Even if Defendant had been entirely compliant, though, the Court expects such behavior and such compliance is not itself sufficient to warrant early termination.

Second, Defendant's serious health conditions, including "recurring bouts with cancer," do not support termination of her supervision. Although Defendant's illness is very unfortunate, Defendant has not shown that her conditions of supervision interfere with her medical treatment in any way or that her health has materially declined to the extent that supervision is no longer necessary. (*See* Docket Nos. 115, 118).

A serious health condition does not necessitate early termination of supervised release unless the defendants can demonstrate that the conditions of supervision prevent their access to medical care. *See United States v. Abuhouran*, 398 F. App'x 712, 715 (3d Cir. 2010) (denying early termination of supervised release for defendant who suffered from neurological problems but did not submit any evidence demonstrating that he was unable to secure adequate medical care while on release); *Antico*, 2008 WL 2973033, at *2 (denying early termination of supervised release for 68-year-old defendant suffering from unspecified health concerns because "there is no evidence that continued supervised release will have anything more than a minimal impact on his day-to-day life"). Even when an elderly defendant's health condition was so severe as to warrant a "significant" departure at sentencing, his motion for early termination of supervised release was denied. *See United States v. Weintraub*, 371 F. Supp. 2d 164, 165, 167 (D. Conn. 2005). There, the court reasoned that the defendant did not demonstrate that his health had "materially further declined to some substantially graver condition" or that his release "hampered" his medical treatment. *Id.* at 167.

On the other hand, the defendant in *United States v. Powell*, No. 2:06-CR-197-PPS-APR,

2011 U.S. Dist. LEXIS 79047, at *5 (N.D. Ind. July 20, 2011), was granted early termination of his supervised release because he was "in the final stages of his life." The court explained that his supervision was terminated because "there is no benefit to be derived by maintaining supervision at public expense" and the defendant was "beyond the need for supervision." *Id.* at *6.

Although Defendant did not further describe her "recurring bouts with cancer" in her Motion or Reply, her medical records provide additional details about her health condition. (*See* Docket No. 122). According to these records, Defendant underwent a left hemithryoidectomy on September 27, 2010 and was diagnosed with a follicular variant of papillary thyroid carcinoma. (Docket No. 122-1 at 2-3; Docket No. 122-2 at 9, 11, 23-24). One week later, she underwent a completion thyroidectomy. (Docket No. 122-1 at 4-5; Docket No. 122-2 at 8, 10). Two lymph nodes were also removed at this time. (Docket No. 122-1 at 4-5). Defendant's right thyroid lobe tested negative for malignancy, and her two lymph nodes tested negative for tumors. (*Id.* at 4-5, 21).

On November 18, 2010, Defendant underwent an isotope thyroid uptake and whole body scan, which revealed areas of increased activity in Defendant's neck that may be representative of residual thyroid tissue, possibly in the lymph nodes. (Docket No. 122-2 at 17; Docket No. 122-3 at 10). The following day, Defendant underwent isotope thyroid ablation therapy. (Docket No. 122-2 at 16; Docket No. 122-3 at 9). Less than two weeks later, on November 30, 2010, she underwent post ablation I-131 scintigraphy. (Docket No. 122-2 at 15; Docket No. 122-3 at 6). This procedure revealed areas of increased activity in Defendant's neck, but they were not deemed to be new or abnormal. (*Id.*).

An ultrasound of the soft issue in Defendant's neck performed on April 11, 2011 revealed

abnormal morphology to her lymph nodes. (*Id.* at 13; Docket No. 122-3 at 5). Metastatic disease to the lymph nodes could not be excluded by this procedure. (Docket No. 122-2 at 13; Docket No. 122-3 at 5). On May 2, 2011, a left neck biopsy revealed an irregular mass, which tested positive for metastatic papillary thyroid carcinoma. (Docket No. 122-2 at 14, 19; Docket No. 122-3 at 2, 3). Defendant underwent enhanced computed tomography of her neck on May 6, 2011. (Docket No. 122-2 at 12). Enlarged lymph nodes were found, and malignancy could not be ruled out. (*Id.*).

In the most recent medical record provided to the Court, dated January 17, 2012, an exam of the Defendant's soft tissue in her neck revealed an enlarged lymph node and a smaller, more indeterminate lymph node. (Docket No. 122-1 at 6). These lymph nodes were determined to be different than those identified on April 11, 2011. (*Id.*).

Although Defendant's medical condition is quite serious, she has not shown that her supervised release interferes with her access to medical treatment. *See Abuhouran*, 398 F. App'x at 715; *Antico*, 2008 WL 2973033, at *2; *Weintraub*, 375 F. Supp. 2d at 167. Furthermore, Defendant has not shown that her health condition has "declined to some substantially graver condition" or that she is "in the final stages of [her] life." *See Powell*, 2011 U.S. Dist. LEXIS 79047, at *5; *Weintraub*, 375 F. Supp. 2d at 167. Although Defendant's medical records illustrate that her illness persists, circumstances have not changed such that Defendant's release could be terminated prematurely. Accordingly, Defendant's sickness is not a sufficient basis for early termination of supervised release.

Third, the Court has verified with the Probation Office that Defendant's conditions of supervision do not prevent her from receiving medical treatment for her illness. The Probation Office confirmed that Defendant's conditions of supervised release accommodate her medical

9

appointments and treatment. As such, premature termination of supervised release is not warranted on this basis.

Having addressed all of the Defendant's specific arguments, the Court now turns to the relevant factors under § 3553(a).

Regarding the nature and circumstances of Defendant's offense and her personal history and characteristics under section 3553(a)(1), Defendant was convicted of a serious crime in this case: conspiracy to possess with intent to distribute five grams or more of cocaine base, in the form commonly known as crack, in violation of 21 U.S.C. § 846. (Docket No. 35). Although not specifically stated in 18 U.S.C. § 3553(a)(1), the seriousness of the defendant's offense may be considered under this subsection. *See United States v. Kay*, 283 F. App'x 944, 948 n.2. Furthermore, Defendant is still a young woman (age 35) but has a significant prior criminal history consisting of multiple arrests and convictions for state offenses – most of which resulted from her abuse of alcohol, including public drunkenness, disorderly conducts, and driving under the influence. (*See Presentence Investigation Report dated 12/8/05* ("PIR") at ¶¶ 33-44). Defendant also has a history of mental health issues and substance abuse problems. (*Id*. at ¶¶ 55-62.). In the past, she has associated with a number of individuals with criminal records, including her brother and a number of former boyfriends. (*Id*. at 46, 50-52). Upon her release from prison, she held a position as a maid, but the Probation Office reports that she was laid off from this job. Most recently, it has been reported that Defendant has been assisting in the care of her grandchild.

She has also been in and out of the hospital, however, due to her illness. Moreover, the Probation Office advises that Defendant was denied public assistance and is in the process of reapplying for same. The Probation Office also reports that Defendant has remained generally

compliant with her conditions of supervised release to this point.[5]  Although Defendant has made some progress since her release from prison despite her cancer diagnosis, the Court recognizes that she has not been in strict compliance with all of the conditions of her release given her reported alcohol use in September 2010.  The Court also notes that alcohol abuse played a role in her criminal conduct in the past.  The Court does not want the Defendant to go back down that "slippery slope."

Regarding the factors under § 3553(a)(2)(B), (C), and (D), for the reasons stated above, the conditions of supervised release continue to afford adequate deterrence to Defendant (whose criminal history places her in criminal history category III) from the commission of further crimes, protect the public from any such crimes, and provide Defendant with any necessary medical care or correctional treatment, i.e., substance abuse and mental health treatment, in the most effective manner.

Subsection (a)(4) requires the Court to consider the sentencing range applicable to the defendant.  Pursuant to 21 U.S.C. §§ 846 and 841(b)(1)(B)(iii), Defendant was eligible for a mandatory minimum term of sixty (60) months of imprisonment and a mandatory minimum term of four (4) years of supervised release at the time of her sentencing.  *See* 21 U.S.C. §§ 846, 841(b)(1)(B)(iii) (2002).  (*See also* PIR at ¶¶ 71, 74).  Additionally, Defendant was eligible for an advisory guidelines range of sixty (60) to sixty-three (63) months of imprisonment and an advisory guidelines range of at least four (4) but not more than five (5) years of supervised release.  *See* 21 U.S.C. § 841(b)(1)(B)(iii) (2002). (*See also* PIR at ¶¶ 72, 75).  Defendant was sentenced to sixty (60) months of imprisonment, the mandatory minimum term, and a term of supervised release of five (5) years, which is within the advisory guidelines range.  (*See id.* at ¶¶ 71-72, 74-75; Docket No. 51).  If the Court were to terminate her supervised release at this time,

---

5     *See* discussion *infra.*

Defendant will have served approximately two (2) years and two (2) months of her term of supervision. This abbreviated term is not even half of the total term of supervised release imposed by the Court at sentencing, and it is barely over half of the minimum term dictated by the guidelines. Therefore, early termination of Defendant's supervised release is not warranted under subsection (a)(4).

Regarding subsection (a)(5), which instructs the Court to consider any pertinent policy statement, Defendant has cited to application note 5 of U.S. Sentencing Guidelines § 5D1.2 in her Reply. (Docket No. 118 at ¶ 5). This note states that the Court has the discretion to "terminate or extend a term of supervised release" and "is encouraged to exercise this authority in appropriate cases." U.S. SENTENCING GUIDELINES § 5D1.2 cmt. n.5 (2011). Examples of said "appropriate case[s]" are "if the defendant is an abuser of narcotics, other controlled substances, or alcohol who, while on supervised release, successfully completes a treatment program, thereby reducing the risk to the public from further crimes." *Id.* Given Defendant's continued alcohol use during part of her supervision and for the reasons already mentioned, the present matter is not an "appropriate case" in which early termination of supervised release is warranted at this time.

Subsection (a)(6) requires the consideration of "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). As this Court has already noted, Defendant was sentenced to the mandatory minimum term of imprisonment of sixty (60) months and a term of supervised release of five (5) years, which is within the advisory guidelines range. (*See* PIR at ¶¶ 71-72, 74-75; Docket No. 51). To terminate Defendant's supervised release at this time would, in fact, promote rather than avoid unwarranted sentence disparities. Defendant has only served

approximately two (2) years and two (2) months of her term of supervised release, which is well below the mandatory minimum range for which she was eligible at sentencing. *See* 21 U.S.C. §§ 846, 841(b)(1)(B)(iii) (2002). Consequently, to avoid sentence disparities, the Court declines to terminate Defendant's supervised release at this time.

Finally, subsection (a)(7) is inapplicable as no restitution was ordered in this case. (*See* Docket No. 51).

Although 21 U.S.C. § 3553(a)(2)(A) is not enumerated in 18 U.S.C. § 3583(e)(1) as a factor for consideration in whether to terminate supervised release, the Court acknowledges that it may also consider "other pertinent factors." *See United States v. Williams*, 443 F.3d 35, 47-48 (2d Cir. 2006); *see also United States v. Young*, 634 F.3d 233, 238-41 (3d Cir. 2011) (analyzing *Williams* and finding "that a district court's consideration of, and explicit reference to, the § 3553(a)(2)(A) factors in imposing a sentence for the violation of supervised release is not a procedural error that renders the sentence *per se* unreasonable"); *Kay*, 283 F. App'x at 347-48 (citing to *Williams* and finding that "it was not clear error" to consider the seriousness of the defendant's crimes under subsection (a)(2)(A) in deciding whether to terminate a term of supervised release). Additionally, in the interest of justice, the court may consider a "broad range of factors." *Pickett*, 2011 U.S. Dist. LEXIS 34236, at *2.

Subsection (a)(2)(A) states that courts should consider "the need for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." Analysis of these three factors is consistent with the Court's consideration of the other § 3553(a) subsections. Defendant's sentence appropriately reflects the gravity of her crime and her lengthy criminal history. Because Defendant has not provided the Court with an "exceptional" or "extraordinary" reason to warrant early termination

of supervision, the Court finds that, to promote respect for the law and to provide just punishment, Defendant's supervised release should not be terminated at this time. *See Laine*, 404 F. App'x at 573-74.

Although the Government did not raise this argument, the Court also notes that Defendant's plea agreement states that she "waives the right to file a motion to vacate sentence, under 28 U.S.C. § 2255, attacking her conviction or sentence, and the right to file any other collateral proceeding attacking her conviction or sentence." (Docket No. 35, Exhibit #1 at ¶ A(6); Docket No. 80 at 3 n.4). To the extent that a motion for early termination of supervised release affects the length of Defendant's overall sentence, she may have waived the right to file the instant motion. The U.S. Court of Appeals for the Third Circuit has recognized that a waiver of appeal rights in a plea agreement precludes review of a district court's decision denying such a motion. *See Laine*, 404 F. App'x at 572-73.

## V. CONCLUSION

Based on the foregoing, after consideration of all of the relevant factors under section 3553(a) as well as the parties' arguments, Defendant's medical records, and contact with the Probation Office, the Court finds that early termination of Defendant's term of supervised release is not warranted at this time. Accordingly, Defendant's motion for early termination of her term of supervised release is denied, without prejudice to re-submission in the event of a change in circumstances which would warrant such a reduction or a subsequent change in the applicable law. An appropriate Order follows.

*/s/ Nora Barry Fischer*
Nora Barry Fischer
United States District Judge

Date: March 14, 2012

cc/ecf: All counsel of record

Paula Dudash c/o Michael J. Novara, Esquire

Probation Office